IN THE

# SUPREME COURT OF JUDICATURE

OF THE

## STATE OF NEW JERSEY,

### AT FEBRUARY TERM, 1866.

---

### DAVID RIPLEY v. THE NEW JERSEY RAILROAD AND TRANSPORTATION COMPANY.

A person purchasing a commutation ticket from a railroad company, and giving a receipt, on which was a note that the ticket should be shown to conductors, &c., when required, and no duplicate ticket would be issued, and upon which ticket it was printed, that the ticket was held subject to the regulations prescribed in the receipt, is bound by his contract; and if by casualty his ticket has been lost, so that he cannot produce it, the company may exact from him the regular fare paid by other passengers.

---

In case.  On demurrer.

The plaintiff purchased a commutation ticket from the defendants for $80, to be good from the 1st of January, 1865, to the 1st of January, 1866.  A receipt was given for the money, to which is added the following note: "The commutation ticket is to be shown to the conductors and ferry masters each trip, whenever required, and returned to some office of the company when the time for which it issued has expired.  These are the pre-requisites to a renewal of the

388

Ripley v. New Jersey Railroad and Transportation Co.

ticket. This privilege and all commutation hereafter to be forfeited without repayment of the above sum or any part thereof, upon any infringement of these rules. No repayment in consequence of any inability to use the privilege. No duplicate ticket will be issued." On the ticket issued was the following : "This ticket is held subject to the regulations prescribed in the receipt, and to be shown to the conductors and ferry masters each trip, and whenever required, and by agreement is not transferable to any person under any circumstances." Plaintiff having casually lost his ticket, was denied entrance into the cars unless he would produce satisfactory evidence of the loss, and pay one half the rate for the unexpired term, according to a resolution of the board, and was obliged to pay the regular fare. This action was brought against the company for damages.

To a declaration setting forth at large the facts of the case, the defendants put in a general demurrer, which was argued before the CHIEF JUSTICE, and Justices VREDENBURGH and ELMER.

For the demurrant, *A. O. Zabriskie.*

For the plaintiff, *Parker & Keasbey.*

VREDENBURGH, J. The declaration states that the defendants, on the 6th of January, 1865, in consideration of $80 paid them, granted to the plaintiff the privilege of a free passage on their road from New Brunswick to New York, daily, for one year, and at the same time gave him a commutation ticket showing such right; and also at the same time a receipt for the money, which receipt also provides that the ticket is to be shown to the conductor each trip, whenever required, and that the privilege is to be forfeited upon any infringement of this rule, and that no duplicate ticket would be issued. The declaration then further avers that in October the plaintiff had his ticket stolen from him,

and that the defendants, because he could not show his ticket, refused him the said privilege of a free pass, whereupon he brought this suit for damages.

This is not a question of the reasonableness of the rules of the company, or whether the plaintiff complied with such rules, or whether it was reasonable or lawful for the company to establish rules that their conductors see and examine the tickets of the passengers; but simply whether it was lawful for the parties so to contract, and whether they did so contract. It is not suggested that the parties might not lawfully make such a contract, and it is apparent upon the express terms of the instrument that they did so contract.

It is argued that the ticket being lost, the plaintiff should be permitted to prove its contents, as in the case of other lost instruments. But nobody objects to that; that is not the difficulty. The difficulty is, that upon proving the contents it appears, that, by the terms of the instrument, the plaintiff has lost the privilege of a free pass. The right to a free pass depended, by the terms of his contract, upon his showing the conductors his ticket, and this he could not do, for he had lost it. It has been argued that the plaintiff had paid his fare, and that he ought not to lose his right because he has lost the evidence of the payment. If there had been no special contract, or if the plaintiff had paid all the fare that the law allowed the defendants to charge, that would have been another question. But he paid here a special fare under a special contract. The defendants agreed that the plaintiff might travel for a fare which is not alleged to be the full fare the law allowed, and the defendants had a right to impose such conditions as they saw fit; and they saw fit to prescribe, as a condition, that the plaintiff should show his ticket, and this he agreed to. He thus became his own insurer that he would not lose his ticket. If he did not like that contract, he should not have entered into it. But having entered into it, he is bound by it, as much so as the company are to carry him if he does show his ticket.

We are not concerned with what might have been the

reasons the company had for inserting this condition in the contract. It is enough for us that they have done so. The demurrer is well taken.

ELMER, J. The plaintiff's declaration, in an action of trespass on the case, is demurred to. It sets forth that in consideration of eighty dollars to them paid by the plaintiff, the defendants agreed to give him a free passage, one trip a day each way, from the first day of January, 1865, to the first day of January, 1866, and gave him a receipt and agreement therefor. This receipt, after acknowledging the receipt of the money, states that the plaintiff shall have a free passage, one trip a day each way, between Jersey City and New Brunswick, &c., and a note is added, " the commutation ticket is to be shown to the conductor and ferry master each trip, whenever required, and returned to some office of the company when the time for which it was issued has expired; these are the pre-requisites of a renewal of the ticket. This privilege and all commutation hereafter is to be forfeited, without repayment of the above sum, or any part thereof, upon any infringement of these rules. No repayment in consequence of any inability to use the privilege. No duplicate ticket will be issued."

It is stated that defendants also issued and delivered to plaintiff a certain ticket for passage, substantially as follows : " Pass David Ripley one trip daily, No. 4456, from 1st January, 1865, to 1st January, 1866, with ferry tickets from New York, obtained by applying to the conductor in the cars on showing this ticket. See other side." On the other side, " This ticket is held subject to the regulations prescribed in the receipt, and to be shown to the conductors and ferry masters each trip, and whenever required, and by agreement is not transferable to any person under any circumstances."

And it is further stated that plaintiff casually lost said ticket by theft, while travelling on said railroad, without fault or carelessness on his part, by reason whereof he was unable to exhibit said ticket to the conductors, as required

by the terms thereof; and that, on a day named, he attempted to enter one of the cars for the purpose of being conveyed from New York to Newark, and requested defendants to convey him free of charge therein, yet the defendants did not nor would convey him as aforesaid, unless he would comply with the terms of a certain resolution of the board of directors of said company, passed April 26th, 1865, as follows, *viz.*, " Resolved, that no duplicate commutation ticket be hereafter issued, unless satisfactory evidence of its loss be presented, the customary bond signed, and a payment made of one-half the rate for the unexpired term ;" but wholly refused to do so, although the plaintiff was willing, and then and there offered to present satisfactory evidence of the loss of said ticket, and to give the customary bond mentioned in said resolution, whereby he has been obliged to pay the regular fare for each daily trip, amounting to two hundred dollars, and was otherwise injured, &c.

The point discussed by counsel, and upon which the case turns is, whether, as insisted by the counsel of the plaintiff, the contract set forth in the declaration should be regarded as a contract to carry the plaintiff free of any other charge, for a stipulated sum paid in advance, his pass ticket being only the evidence of this, which, if lost or destroyed, he was entitled to supply by satisfactory evidence of a secondary character, like the case of a suit on a bond, or other common law evidence of indebtedness; or whether, as was insisted by the counsel of defendants, it was in its nature a special contract, whereby the plaintiff's right to be carried free of charge, was made dependent upon his willingness and ability to produce and show the ticket delivered to him.

There is certainly this material difference between the cases of a lost writing, referred to by the plaintiff's counsel, and this; that in those cases the secondary evidence was produced in court upon the trial of actions brought to enforce contracts; whereas, in this case, the secondary evidence, if admissible at all, was to be produced to the conductor when a passage was demanded, or to some other officer of the

company. The action is for refusing to carry free of charge, and not for refusing to issue a duplicate or new ticket in lieu of the one lost.

But if the action had been for refusing to issue a new ticket, the question would still have arisen, were they bound to do this, or to permit the plaintiff to ride without producing his pass? The company no doubt adopted the plan of issuing commutation tickets for the stipulated price, because they considered it their interest to do so. We cannot, however, overlook the fact disclosed in the declaration, that the commutation price was greatly below the regular fare. For this reduced fare they stipulated to carry each commuter one trip a day during a year; but in their receipt, as well as on the ticket itself, they expressly provide that the ticket is to be shown each trip; and it was also announced that no duplicate ticket would be issued.

The construction of this contract, contended for on behalf of the plaintiff, amounts to this: that every officer of the company was bound to remember and recognize every commuter, if he had lost his ticket, or to allow him the opportunity of proving his loss. Such a construction would be too unreasonable to be adopted. In the nature of things it was essential to the due protection of the company to require the commuter to show his ticket, as in all other cases passengers are bound to procure and show them, in conformity with the reasonable rules of the company. In my opinion, the case comes within the principle universally adopted by the courts, that the ticket furnished is the evidence of the contract, and that a rule requiring them to be shown must be complied with. *The State* v. *Overton*, 4 *Zab.* 435; *Boston and Lowell R. R.* v. *Proctor*, 1 *Allen* 267; *Willets* v. *Buffalo and Rochester R. R.*, 14 *Barb.* 585; *Beebe* v. *Ayres*, 28 *Barb.* 275; *Barker* v. *Coflin*, 31 *Barb.* 556; *Hubbard* v. *New York and Erie R. R. Co.*, 15 *New York R.* 455; *Bissel* v. *New York Central R. R.* 446.

In this case it is alleged that the ticket was lost without any fault of the plaintiff, and it is insisted that this presents

Ripley v. New Jersey Railroad and Transportation Co.

a different case from those where the omission was occasioned by the parties' own fault. If the meaning of the contract, contained in the receipt and ticket, was, as I think is very clear, that the commuter could only be allowed to pass free upon producing his ticket, without any provision against its loss or destruction, the difference is immaterial.

It would seem from the terms of the resolution adopted by the company April 26th, 1865, after the plaintiff's commutation ticket was purchased, and it was admitted by the defendants' counsel, that a practice had prevailed, when satisfactory evidence of the loss of a ticket and a satisfactory bond of indemnity was presented, to issue a duplicate, that is to say, a new ticket, without requiring any additional pay. But this was a gratuitous practice, liable to be at any time altered. The original receipt and ticket expressly announced, that no duplicate would be issued. That duplicate ticket, as thus used, meant, according to one of the definitions and ordinary meanings of the phrase, another ticket corresponding to the first, which would be called properly a duplicate, if issued after the first was lost, plainly appears from the resolution now so much complained of. It is not averred in the declaration that a right to have a duplicate ticket or to pass without the original, was held out to the commuters as any part of the inducement to purchase, or that such right formed any part of the contract; the meaning of the contract actually entered into is left to be inferred from the terms of the receipt and ticket; and that meaning, in my opinion, is too plain to admit of reasonable doubt.

Judgment for defendants.

The CHIEF JUSTICE concurred.